# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KIMBERLY COMREY,** | : | **CIVIL ACTION NO. 1:10-CV-2414** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DISCOVER FINANCIAL** | : | |
| **SERVICES, INC., and** | : | |
| **DISCOVER BANK,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This action arises in the context of a dispute between plaintiff Kimberly
Comrey ("Comrey") and defendant Discover Products, Inc., successor to DFS
Services LLC, formerly known as Discover Financial Services, Inc., and Discover
Bank (collectively, "Discover").  Comrey alleges that Discover furnished
information specific to Comrey's Discover credit card account to credit reporting
agencies in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.
Discover, invoking the arbitration clause contained in Comrey's cardmember
agreement, moves the court to compel arbitration and to stay all proceedings
pending completion of arbitration (Doc. 7).  Comrey contends that she did not
expressly agree to the terms of the arbitration clause because Discover failed to
provide her sufficient notice of the provision.  For the reasons that follow, the
motion will be granted.

I.      **Statement of Facts & Procedural History**[1]

Comrey opened a credit card account with Discover Bank in October of 1991.

(Doc. 7-3 ¶ 6).  Upon the approval of her application, a credit card and cardmember

agreement were mailed to Comrey's residence.  (Id. ¶ 7).  Comrey agreed to the

terms of the cardmember agreement when she first utilized the card.  (Id. ¶ 8).

Pursuant to the "Change of Terms" provision included in the 1991 cardmember

agreement,[2] Discover has modified the cardmember agreement numerous times

between 1991 and 2006.  (Id. at ¶ 10).  Discover cardholders received notices of

amendment to their cardholder agreements, via mail, with each modification.  (Id.)

---

[1] In accordance with the standard of review on a motion to compel
arbitration, the court will present the facts in the light most favorable to Comrey, as
the non-moving party. See infra Part II.

[2] The 1991 Changes of Terms provision provides as follows:

**CHANGE OF TERMS**: We may change any term or part of this
Agreement, including finance charge rate, fee or method of computing
any balance upon which the finance charge rate is assessed, by
sending you a written notice at least 30 days before the change is to
become effective.  We may apply any such change to the outstanding
balance of your Account on the effective date of the change and to new
charges made after that date.  If you do not agree to the change, you
must notify us in writing within 30 days after the mailing of the notice
of change at the address provided in the notice of change, in which
case Your Account will be closed and you must pay us the balance that
you owe us under the existing terms of the unchanged Agreement.
Otherwise, you will have agreed to the changes in the notice.  Use of
the Card after the effective date of the change shall be deemed
acceptance of the new terms as of such effective date, even if you
previously notified us that you did not agree to the change.

(Doc. 7, Ex. 1¶ 22, at 4).

Notices of amendment provided information on changes to the cardmember agreement and included instructions for rejecting the amendments.  (See Doc. 7, Ex. 2).

In February of 2003, Discover amended its cardmember agreement and mailed a Notice of Amendment ("2003 Amendment") to customers.  (Doc. 7-3 ¶ 11). The 2003 Amendment contained a provision for arbitration of all disputes pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*  (Doc. 7, Ex. 4 at 7-8). The 2003 Amendment included a Notice of Right to Reject Arbitration ("2003 Notice"), whereby cardholders had the option to reject the arbitration agreement in writing if they so desired.[3]  (Doc. 7, Ex. 3).   The 2003 Notice also advised customers that they had the option of retaining their accounts even if they rejected the terms of the arbitration agreement.  (Id.)  Discover's records reflect that Comrey failed to provide such notice of her rejection of the arbitration agreement.  (Doc. 7-3 ¶ 14).

---

[3] The 2003 Notice states as follows:

We are hereby giving you an opportunity to reject the Arbitration of Disputes section in its entirely effective as of April 1, 2003, in which event neither you nor we will have the right to compel the other to resolve any claim or dispute through arbitration.  To reject this section, you must provide us a notice (a "Rejection Notice") by March 25, 2003 [in writing].  Calling us to indicate that you reject the Arbitration of Disputes section or sending a Rejection Notice in a manner or format that does not comply with all applicable requirements is insufficient notice.

(Doc. 7, Ex. 3).

3

Similarly, in March of 2006, Discover mailed to cardholders a Notice of

Amendment ("2006 Amendment") to the cardmember agreement.  (<u>Id.</u> ¶ 16).  This

amendment also contained an arbitration clause that required binding arbitration

of any claims and disputes relating to cardholders' accounts:

> **ARBITRATION OF DISPUTES.**  In the event of any past, present or
> future claim or dispute (whether based upon contract, tort, statute,
> common law or equity) between you and us arising from or relating to
> your Account, any prior account you have had with us, your
> application, the relationships which result from your Account or the
> enforceability or scope of this arbitration provision, of the Agreement
> or of any prior agreement, you or we may elect to resolve the claim or
> dispute by binding arbitration.

(Doc. 7, Ex. 6 at 8).  The provision stated that Discover's rights and obligations

extended to its parent corporations and subsidiaries.[4]  (<u>Id.</u>)  Finally, the 2006

Amendment delineated a cardholder's right to reject the amendments and provided

instructions for closing an account.  (Doc. 7, Ex. 5).  Discover's records indicate that

Comrey never notified Discover in writing of any objections to the 2006

Amendment.  (Doc. 7-3 ¶ 18).

---

[4] The applicable portion of the 2006 arbitration clause states as follows:

> Our rights and obligations under this arbitration provision shall inure
> to the benefit of and be binding upon our parent corporations,
> subsidiaries, affiliates (including, without limitation, Discover
> Financial Services LLC), predecessors, successors, assigns, as well as
> the officers, directors and employees of each of these entities . . . .

(Doc. 7, Ex. 6 at 8).

In October of 2010, Comrey filed a complaint against Discover in Pennsylvania state court, asserting violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, in connection with her Discover credit card account. (Doc. 3 ¶ 6-15). Discover subsequently filed a notice of removal to this court pursuant to 28 U.S.C. § 1446. (Doc. 1). Thereafter, Discover answered the complaint and asserted as an affirmative defense that Comrey was party to a binding and enforceable arbitration agreement, as provided in Discover's cardmember agreement. (Doc. 4 at 7). Discover also filed a motion to compel arbitration, and stay all proceedings pending completion of arbitration, on January 19, 2011. (Doc. 7). Comrey filed an opposing brief on February 10, 2011. (Doc. 8). The motion has been fully briefed and is now ripe for disposition.

## II.   <u>Standard of Review</u>

Granting a motion to compel arbitration effects a "summary disposition of the [factual] issue" of the existence of an agreement to arbitrate, and, for this reason, courts should consider the facts in the light most favorable to the nonmoving party, giving that party "the benefit of all reasonable doubts and inferences that may arise." <u>Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.</u>, 636 F.2d 51, 54 & n. 9 (3d Cir. 1980), <u>quoted with approval in</u> <u>Sandvik AB v. Advent Int'l Corp.</u>, 220 F.3d 99, 106 (3d Cir. 2000). In the context of such a motion, the court may consider the pleadings, documents of uncontested validity, and affidavits or depositions submitted by either party. <u>See</u> <u>id.</u> (citing FED. R. CIV. P. 56(c)).

III.   **Discussion**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides a framework for the implementation of private arbitration agreements and establishes a strong federal policy in favor of arbitration.  Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 178 (3d Cir. 2010) (citing Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003)).  Indeed, "federal law presumptively favors the enforcement of arbitration agreements."  Harris v. Green Tree Fin. Corp., 183 F.3d 173, 178 (3d Cir. 1999). When adjudicating a motion to compel arbitration, the court must address two issues:  (1) whether the parties have entered into a valid written agreement to arbitrate, and (2) whether the dispute in question falls within the scope of that agreement.  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005); Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 202 (3d Cir. 2001); 9 U.S.C. § 2 (addressing the validity, irrevocability, and enforcement of written agreements to arbitrate).  Absent language in the parties' agreement clearly providing otherwise, the arbitrability of a dispute is a question of law for the court to determine.  U.S. Small Bus. Admin. v. Chimicles, 447 F.3d 207, 209 (3d Cir. 2006); General Electric Co. v. Deutz AG, 270 F.3d 144, 154 (3d Cir. 2001).  Mindful of these principles, the court turns to the arbitration clause in the present matter.

A.   **Application of the FAA to the Arbitration Agreement**

The parties do not dispute that the credit card agreement and transactions involve "commerce," as defined in 9 U.S.C. § 1 ("commerce among the several States").  Hence, the instant arbitration clause falls within the scope of the FAA,

and thus the FAA applies to the action.  See Gov't of the Virgin Islands v. United Indus. Workers, N.A., 169 F.3d 172, 176 (3d Cir. 1999) ("the FAA's reach coincides with that of the Commerce Clause") (citing Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 274 (1995)).

### B.   Existence of a Valid and Enforceable Arbitration Agreement

The FAA provides that arbitration agreements are enforceable according to their construction: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. In determining their enforceability, arbitration agreements are placed on equal footing with other contracts.  Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 89 (2000) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). The party seeking to avoid arbitration bears the burden of proving invalidity of an arbitration agreement.  Id. at 92.

The Supreme Court has held that "generally applicable contract defenses," including unconscionability, "may be applied to invalidate arbitration agreements without contravening § 2" of the FAA.  Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996).  Unconscionability is satisfied by two requirements: first, "that the contractual terms are unreasonably favorable to the drafter"; and second, "that there is no meaningful choice on the part of the other party regarding acceptance of

the provisions." <u>Alexander v. Anthony Int'l, L.P.</u>, 341 F.3d 256, 265-66 (3d Cir. 2003) (quoting <u>Harris</u>, 183 F.3d at 181).

The reviewing court must apply federal substantive law to "determine[] whether an issue governed by the FAA is referable to arbitration[,]" but the court may apply state law when assessing issues of contract formation and defenses to enforcement. <u>Gay v. CreditInform</u>, 511 F.3d 369, 388 (3d Cir. 2007); <u>Spinetti v. Serv. Corp. Int'l</u>, 324 F.3d 212, 214 (3d Cir. 2003). By its express terms, Delaware law governs state law issues arising under the cardmember agreement,[5] and therefore, the court will apply Delaware law to determine validity of the arbitration agreement.

Comrey contends that the agreement is unconscionable because Discover failed to provide her with proper notice of the proposed addition of the arbitration clause. (Doc. 9 at 7-9). Comrey argues that Discover is unable to prove that it *effectively* served her with any amendments to the cardmember agreement. (<u>Id.</u> at 9). Under Delaware law, plaintiff bears the burden of rebutting the presumption of receiving an arbitration agreement. <u>See Graham v. Comm. Credit Co.</u>, 41 Del. Ch. 355, 359 (Del. Ch. 1963) ("Mail which is properly addressed and posted . . . is

---

[5] The 2006 Agreement provides the following:

**GOVERNING LAW.** This Agreement and any claim or dispute arising out of this Agreement will be governed by applicable federal law and, to the extent state law applies, Delaware law.

(Doc. 7, Ex. 6 at 8).

presumed to be duly received by the addressee"). In applying Delaware law, other circuit courts have held that mere denial is insufficient to rebut the presumption of receipt. <u>See</u>, <u>e.g.</u>, <u>Vaden v. Discover Bank</u>, 489 F.3d 594, 607 (4th Cir. 2007). Interestingly, Comrey does not deny that she received the amendments to the cardmember agreements. Rather, she claims that the amendments were mailed to her "in a deceptive manner designed to hide the true purpose of the mailing" (Doc. 9 at 9). By virtue of her application for a credit card account with Discover Bank and her subsequent use of the credit card issued to her, Comrey agreed to the terms of the cardmember agreement. Therefore, Comrey was notified of both her right to reject the arbitration provision and the procedure by which she could do so. The court finds as a matter of law that these notices are not deceptive or ambiguous. Moreover, Discover has no record that Comrey took a single affirmative step to reject the arbitration agreements. Accordingly, Comrey is deemed to have accepted the terms of the cardmember agreement and its subsequent amendments.

Comrey points to several cases that have invalidated arbitration agreements based on the fact that the parties did not contemplate the addition of an arbitration clause to the original credit card agreement. (<u>Id.</u> at 9-10). However, the authority granted to banks in change-of-terms provisions hinges on governing state law. Delaware law expressly provides for the amendment of credit card agreements such that banks may add arbitration clauses regardless of what the original cardmember

agreement contemplated.  5 Del. C. § 952(a).[6]  Federal courts have upheld this

Delaware statute, concluding that Delaware law authorizes banks to amend credit

card agreements by adding arbitration provisions.  See, e.g., Cohen v. Chase Bank,

N.A., 679 F. Supp. 2d 582, 592 (D.N.J. 2010); Pick v. Discover Fin. Servs., Inc., No.

00-935, 2001 WL 1180278 at *4-5, 2001 U.S. Dist. LEXIS 15777 at *13-16 (D. Del.

Sept. 28, 2001).  The cases cited by Comrey do not apply Delaware state law and are

therefore inapposite.

Moreover, other federal courts have enforced arbitration agreements with

substantially the same terms as the agreement at issue.  In Discover Bank v. Vaden,

Discover moved to compel arbitration of the defendant's counterclaims under the

FAA.  409 F. Supp. 2d 632 (D. Md. 2006), aff'd, 489 F.3d 594 (4th Cir. 2007), rev'd on

other grounds, 129 S. Ct. 1262 (2009).  The U.S. District Court for the District of

Maryland found that a valid arbitration agreement existed between the two parties

and that the defendant failed to exercise her right to opt-out, thus rendering her

---

[6] The applicable Delaware statute provides as follows:

 [A] bank may at any time and from time to time amend such
 agreement in any respect, whether or not the amendment or the
 subject of the amendment was originally contemplated or addressed
 by the parties or is integral to the relationship between the parties.
 Without limiting the foregoing, such amendment may change terms by
 the addition of new terms or by the deletion or modification of existing
 terms, whether relating to . . . arbitration or other alternative dispute
 mechanisms, or other matters of any kind whatsoever .

5 Del. C. § 952(a).

claims subject to arbitration.  409 F. Supp. 2d at 639.  <u>See also</u> <u>Discover Bank v. Cook</u>, No. 2:05-CV-19-FWO, 2005 WL 1514034 (M.D. Ala. June 27, 2005).

For all of these reasons, the court finds that there is simply no evidence of unconscionability, and that Comrey has failed to satisfy her burden of proving the invalidity of the arbitration clause.  The court concludes that the parties agreed to a valid and enforceable arbitration provision.

### C.   <u>Scope of the Agreement</u>

The FAA requires "any doubts concerning the scope of arbitrable issues" to be "resolved in favor of arbitration."  <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983).  Federal law provides that the court should compel arbitration "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  <u>Trippe Mfg. Co. v. Niles Audio Corp.</u>, 401 F.3d 529, 532 (3d Cir. 2005) (quoting <u>AT&T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 650 (1986)) (emphasis added).  As long as a party's claim to arbitration of an issue is "plausible," issues of interpretation should be "passed on to the arbitrator." <u>Sharon Steel Corp. v. Jewell Coal & Coke Co.</u>, 735 F.2d 775, 778 (3d Cir. 1984).

The presumption of arbitrability is particularly strong when the parties contractually agree to an arbitration provision broadly encompassing all disputes arising from or relating to the agreement.  <u>AT&T</u>, 475 U.S. at 650; <u>Battaglia v. McKendry</u>, 233 F.3d 720, 725 (3d Cir. 2000) ("This presumption of arbitrability is particularly applicable where the arbitration clause at issue is broad.").

11

As amended in 2006, the arbitration clause in Comrey's cardmember agreement provides for binding arbitration of "any claim or dispute (whether based upon contract, tort, statute, common law or equity) between [Comrey] and [Discover] arising from or relating to [Comrey's] Account . . . ." (Doc. 7, Ex. 6 at 8). Comrey's claim against Discover for statutory violations of the Fair Credit Reporting Act arises directly from her credit card account with Discover Bank. (Doc. 3 ¶¶ 6-15). In adherence to the broad presumption of arbitration set forth in AT&T, the court finds that Comrey's dispute clearly relates to her cardmember agreement with Discover. Thus, Comrey's claims fall within the broad scope of the Discover arbitration agreement.

### D.   Waiver of Arbitration Rights

Alternatively, Comrey contends that Discover waived arbitration by failing to raise a venue challenge under Federal Rule of Civil Procedure 12(b). (Doc. 9 at 5-7). This argument is without merit. "[W]aiver of arbitration rights 'is not to be lightly inferred.'" See Palcko v. Airborne Express, Inc., 372 F.3d 588, 598 (3d Cir. 2004) (quoting Galvik Constr. Co. v. H.F. Campbell Co., 526 F.2d 777, 783 (3d Cir. 1975)). A party does not waive the right to arbitration merely by answering on the merits, asserting a counterclaim or even engaging in limited discovery. Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 925 (3d Cir. 1992) (citing Galvik, 526 F.2d at 783). To the contrary, waiver is only found "where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." PaineWebber, Inc. v. Faragalli, 61 F.3d 1063, 1068-69 (3d Cir. 1995)

(quoting <u>Galvik</u>, 526 F.2d at 783).  "[P]rejudice is the touchstone for determining whether the right to arbitrate has been waived[.]"  <u>Hoxworth</u>, 980 F.2d at 925 (citing <u>Galvik</u>, 526 F.2d at 784).

In the present matter, Discover moved to compel arbitration 51 days after filing its answer to Comrey's complaint.  It gave sufficient notice of its intent to refer the claims to arbitration in its answer to the complaint, and Comrey has provided scant evidence of prejudice to her caused by this slight delay.  For these reasons, the court finds that Discover has not waived its arbitration rights.

### E.   <u>Enforceability of the Agreement by Discover Products, Inc.</u>

Discover asks that Discover Products, Inc., successor to DFS Services LLC and a wholly-owned subsidiary of Discover Bank, be entitled to enforce the arbitration agreement.  (Doc. 7-2 at 21-22).  The Third Circuit has recognized that a third party beneficiary is bound by contract terms where its claim arises out of the underlying contract.  <u>See</u> <u>E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.</u>, 269 F.3d 187, 195 (3d Cir. 2001); <u>Bouriez v. Carnegie Mellon Univ.</u>, 359 F.3d 292, 294 (3d Cir. 2004) (common law theories such as agency, third party beneficiary and estoppel may be used to bind a non-signatories to arbitration clauses).

Discover's arbitration agreement provides that Discover Bank's rights and obligations "shall inure to the benefit of and be binding upon our parent corporations, subsidiaries, affiliates . . . predecessors, successors, assigns, as well as the officers, directors and employees of each of these entities . . . ."  (Doc. 7, Ex. 6 at

8).  As a subsidiary of Discover Bank, Discover Products is entitled to invoke the

arbitration rights of Discover Bank and to compel arbitration of Comrey's claims.

**IV.**     **Conclusion**

For the foregoing reasons, Discover's motion to compel arbitration (Doc. 7)

will be granted.  In light of the binding nature of the arbitration contemplated by

the parties, the Clerk of Court will be directed to close the case file.

An appropriate order follows.


                                                      S/ Christopher C. Conner
                                                    CHRISTOPHER C. CONNER
                                                    United States District Judge


Dated:        April 15, 2011

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KIMBERLY COMREY,** | : | **CIVIL ACTION NO. 1:10-CV-2414** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DISCOVER FINANCIAL** | : | |
| **SERVICES, INC., and** | : | |
| **DISCOVER BANK,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 15th day of April, 2011, upon consideration of the motion to compel arbitration (Doc. 7), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.  The motion to compel arbitration (Doc. 7) is GRANTED.

2.  The parties are instructed to arbitrate plaintiff's claims in accordance with the cardmember agreement.

3.  The case is dismissed, and the Clerk of Court is instructed to CLOSE this case file.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge